IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DIANE TURNER,          *

                               *      Civil Action No. CCB-21-2656

     v.                           *

SHANTE McCRAY-BEY         

                               *
*************

## MEMORANDUM

Pending before the court is a motion for summary judgment brought by defendant Shante McCray-Bey ("Shante"). (ECF 25-1, Motion for Summ. J.). The instant case is an interpleader action brought by Primerica Life Insurance Company ("Primerica") concerning which of the competing claimants, Shante, or plaintiff Diane Turner ("Turner"), as Personal Representative of the Estate of Tyrone McCray-Bey, Jr. ("Tyrone"), is entitled to receive the proceeds of the policy. (ECF 1, Compl. in Interpleader). The motions are fully briefed, and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons that follow, the court will deny the motion.

## BACKGROUND

This action pertains to proceeds of a spouse term insurance rider to a term life insurance policy issued by Primerica to Shante, the primary insured and owner of the policy, with Tyrone, her then-husband, covered under the policy as the insured spouse. (ECF 1 at ¶ 9, Compl.). While Shante and Tyrone were married, Shante applied for the policy and designated herself as the primary beneficiary. (*Id.* at ¶ 16). The policy was subsequently issued on April 19, 2019, with coverage on Tyrone's life in the initial amount of $555,000. (*Id.* at ¶ 15). Relevant here is an endorsement contained within the policy that states "[a] person who feloniously and intentionally

kills, conspires to kill, or procures the killing of the insured and who is a named beneficiary of a life insurance policy on the insured is not entitled to a benefit under the policy." (*Id.* at ¶ 17; ECF 1, Ex. 2). On September 26, 2019, Shante was granted an absolute divorce from Tyrone (*Id.* at ¶ 18; Ex. 1), and on May 23, 2020, Tyrone was shot to death in Baltimore – his manner of death classified by the medical examiner as a homicide. (*Id.* at ¶ 19).

On the day of Tyrone's death Shante had planned to host a birthday party for her daughter at her home and buy a kiddie pool at the local store that morning. (ECF 30-2 at 4, Response). Rather, she awoke at approximately 8:00 or 9:00 a.m. and at 9:30 a.m. retired to her room which was isolated in the basement of the home, while her minor children and their minor friends played upstairs, without adult supervision. (*Id.* at 4-5). Shante remained in her room until she was notified of Tyrone's death. (*Id.*). Tyrone was pronounced dead at 2:13 p.m. (ECF 30-3 at 19, Shante Depo.) At some point in between the first officer arriving to the scene at approximately 2:04 p.m., and 2:13 p.m., Shante received a call from her sister who notified her of the shooting and told her to come to the city. (*Id.* at 15, 19). At 2:09 p.m., within minutes after discovering Tyrone had been shot, Shante communicated with Primerica and consented to receive electronic communications. (*Id.* at 19- 20; ECF 30-2 at 6; ECF 31 at 4, Reply). She claims she did this in order to obtain information "for Tyrone's family." (ECF 30-3 at 20; ECF 30-2 at 6). She also took her life insurance paperwork with her to the city. (ECF 30-3 at 20).

On June 18, 2020, Shante submitted a claimant's statement to Primerica for payment of the benefit which as of the date of Tyrone's death, was $605,000. (ECF 1 at ¶¶ 20, 21). Diane Turner, Tyrone's mother and next of kin, however, was appointed as personal representative of Tyrone's estate by the Register of Wills of Maryland. (*Id.* at ¶ 22; ECF 1-4, Register of Wills Order). Between August 2020 and October 2021, Primerica contacted the officer assigned to investigate

Tyrone's homicide within the Baltimore City Police Department ("BCPD"), and on each occasion, the detective communicated to Primerica that Shante was neither a suspect nor cleared as a suspect. (ECF 1 at ¶ 25). While one person has been charged to date, the criminal case was ultimately dismissed on a nolle prosequi plea, and at this time no other individuals have been charged in Tyrone's murder. (ECF 30-2 at 7). Given the circumstances, Primerica maintains that it could not determine the proper beneficiary of the policy without risking exposure to potentially conflicting liabilities and as a result filed a complaint in interpleader to determine the proper beneficiary. (ECF 1 at ¶ 27). On February 14, 2022, Primerica deposited $613,077.30, representing the spousal rider death benefit and interest payable, into the registry of the Court, and was dismissed as a party. (ECF 25-1 at 2; ECF 15, Order; ECF 17-1, Receipt).

Shante filed this motion for summary judgment on November 22, 2022, arguing that there is no evidence beyond speculation that she is in violation of Maryland's slayer rule, such that she is disqualified from receiving the spousal rider death benefit of life insurance Policy. (ECF 25-1 at 1). Turner responded on January 6, 2023, arguing that significant disputes of material fact regarding whether Shante was involved in Tyrone's murder still exist, "not the least of which is [Shante's] inability to plausibly explain why she contacted Primerica just moments after the shooting to set up electronic communications with the insurance company." (ECF 30-2 at 2). Furthermore, Turner asked the court to defer ruling pursuant to Federal Rule of Civil Procedure 56(d) to permit the production and consideration of the evidence within the BCPD file which she believed contained additional facts critical to determining whether Shante was involved in Tyrone's death. (*Id*. at 2-3). On January 9, 2023, the defendant replied, (ECF 31), and on May 3, 2023, a joint status report was submitted to the court explaining that the parties have completed discovery in this matter and that the BCPD investigative file had in fact since been produced. (ECF

3

32 at 2, Status Report) According to the parties, the file contains statements by the defendant and witnesses that the plaintiff intends to use for impeachment purposes at trial. (*Id.*) At this time, however, Turner does not intend to introduce further evidence to the court. (*Id.*)

## LEGAL STANDARDS

a. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). The relevant inquiry is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (quoting *Anderson*, 477 U.S. at 255).

      b. Maryland Slayer Rule

Maryland courts have developed a common law slayer rule derived from a trilogy of cases. *Sherman v. Sherman*, 804 F. Supp. 729, 732 (D. Md. 1992) (citing *Ford v. Ford*, 512 A.2d 389, 390 (1986), *Chase v. Jenifer*, 271 Md. 177, 315 A.2d 513 (1958), *Price v. Hitaffer*, 164 Md. 505, 165 A. 470 (1933)). Generally, the rule provides that "one who feloniously and intentionally causes the death of another may not profit by taking any portion of the victim's estate or the proceeds of the victim's life insurance policy." *Clark v. Clark*, 42 F.3d 1385 at *3 (4th Cir. 1994) (citing *Ford v. Ford,* 512 A.2d 389, 392 (Md.1986)). The slayer rule's applicability is determined in a civil proceeding whereby the burden of proof rests with the party asserting the rule who "must show by a preponderance of the evidence that the homicide was felonious and intentional." *Id.*

## DISCUSSION

While Turner had initially requested that ruling be denied based on the evidence on the record at that time, or, in the alternative, be deferred to permit the production of additional evidence, on May 5, 2023, the parties submitted a joint status report informing the court that discovery in this matter is complete and that the presently produced BCPD file contains statements that Turner intends to introduce at trial. (ECF 32 at 2). Keeping in mind that the burden of proof is on the estate, and that mere suspicion or speculation is not sufficient, the circumstances described above make it possible the estate may be able to prove its case upon a full factual record, which is best developed at trial.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment will be denied and the case will be referred to mediation. If it does not resolve, a bench trial will be scheduled.

A separate order follows.

 08/03/2023  
Date

/s/  
Catherine C. Blake  
United States District Judge